PEOPLE v SLATER

Docket No. 85098. Submitted February 11, 1986, at Detroit. Decided May 5, 1986.

Mary Slater was bound over for trial in the Recorder's Court of Detroit on a charge of possession with intent to deliver less than fifty grams of cocaine. Following an evidentiary hearing, the court, Evelyn K. Cooper, J., found that the police officers involved in Slater's arrest had failed to comply with the "knock-and-announce" statute governing the execution of search warrants by improperly entering defendant's house before having been refused admittance and prior to allowing a sufficient time for a reply to their announcements of identity and purpose. The evidence seized during the search was suppressed and the charge against defendant dismissed. The people appealed. *Held:*

1. Refusal of admittance under the knock-and-announce statute is not limited to affirmative denials. The officers executing the search warrant observed a young male run towards the stairs in the defendant's house following their knock and announcement of purpose and presence. They therefore had a reasonable basis to believe that they were being denied admittance and were justified in forcing entry into the house. Under the circumstances in this case, the entry substantially complied with the requirements of the knock-and-announce statute.

2. Even if it were assumed that the officers were not denied admittance, such failure to comply with the statute was excused by the officers' justified belief that the noncompliance was necessary to prevent the occupants from destroying the

REFERENCES

Am Jur 2d, Search and Seizure § 91.

What constitutes violation of 18 USCS § 3109 requiring federal officer to give notice of his authority and purpose prior to breaking open door or window or other part of house to execute search warrant. 21 ALR Fed 820.

Sufficiency of showing of reasonable belief of danger to officers or others excusing compliance with "knock and announce" requirement—state criminal cases. 17 ALR4th 301.

What constitutes compliance with knock and announce rule in search of private premises—state cases. 70 ALR3d 217.

narcotics which the officers were hoping to find. The existence of such exigent circumstances excuses noncompliance with the knock-and-announce statute.

3. The search warrant was properly executed and the trial court erred in suppressing the evidence and dismissing the charge against defendant.

Reversed.

1. SEARCHES AND SEIZURES — EXECUTION OF SEARCH WARRANTS — KNOCK AND ANNOUNCE RULE — FORCIBLE ENTRY.

Police officers executing a search warrant are required by statute to notify the people within the premises to be searched of their authority and purpose and only after being refused admittance are they to use force to enter the premises; refusal of admittance under the statute is not limited to affirmative denials, however, and a court may find that the refusal of admittance requirement has been substantially complied with where, after knocking and announcing their purpose, the police observe activity within the premises which may reasonably be construed as an attempt to destroy the things for which the search warrant was issued (MCL 780.656; MSA 28.1259[6]).

2. SEARCHES AND SEIZURES — EXECUTION OF SEARCH WARRANTS — KNOCK AND ANNOUNCE RULE — EXIGENT CIRCUMSTANCES.

The existence of exigent circumstances may excuse noncompliance with the statute which requires police officers executing a search warrant to notify the people within the premises to be searched of their authority and purpose and permits forcible entry of the premises by the police only after they have been refused admittance (MCL 780.656; MSA 28.1259[6]).

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *John D. O'Hair,* Prosecuting Attorney, and *Timothy A. Baughman,* Deputy Chief, Civil and Appeals, for the people.

*Robert Mann,* for defendant.

Before: MACKENZIE, P.J., and CYNAR and G. T. MARTIN,* JJ.

CYNAR, J. The people appeal as of right from an

* Retired circuit judge, sitting on the Court of Appeals by assignment.

order of dismissal entered by the Detroit Recorder's Court on the basis of suppression of the evidence.

Following a November 26, 1984, preliminary examination, defendant was bound over for trial on the charge of possession with intent to deliver less than fifty grams of cocaine, pursuant to MCL 333.7401(2)(a); MSA 14.15(7401)(2)(a). On January 7, 1985, defendant filed a motion for an evidentiary hearing with the Recorder's Court. Defendant argued that the manner in which the police executed a search warrant violated Michigan's "knock-and-announce" statute, MCL 780.656; MSA 28.1259(6), and that the evidence seized during the subsequent search should therefore be suppressed.

Pursuant to defendant's motion, an evidentiary hearing was conducted in the Recorder's Court. At the hearing, the respective parties presented testimony concerning the manner of the execution of the search warrant. The prosecutor elicited the testimony of two members of the Detroit Police Department. Sergeant Ronald Ferguson testified that on September 15, 1984, at approximately 5:30 P.M., he and eight or nine other officers appeared at 5230 South Clarendon, in the City of Detroit, with a warrant to search the premises for narcotics. Upon their arrival, Sergeant Ferguson went to the front door and knocked on the screen door. According to Ferguson, the screen door was closed but unlocked and the inner door was open. After knocking, Ferguson announced the police officers' presence and the fact that they had a search warrant. Then, Ferguson saw a young black male run past the door towards the stairs. Figuring that the male was going to attempt to dispose of the narcotics, Ferguson and the other officers entered the premises immediately. Ferguson went through the living room towards the dining room and

observed defendant and defendant's daughter, Gloria Slater, standing in the dining room. Meanwhile, the other officers ran upstairs, where they apprehended the young male and confiscated the drugs.

Officer Fred Watkins testified that after Sergeant Ferguson knocked on the door and announced his purpose and presence, Watkins saw the black male, who was later identified as defendant's son, Thomas Slater, run up the stairs inside the house. Watkins and the other officers then entered the house, whereupon Watkins approached defendant and Gloria Slater. Watkins took a purse from defendant's possession, in which he found three small "zip-loc baggies" containing a white powder suspected to be cocaine and a .25 caliber automatic gun. On cross-examination, Watkins testified that it took only two seconds to open the screen door and walk into the house.

Defendant took the stand at the hearing to testify on her own behalf. Defendant testified that she was asleep in the living room at the time the officers entered her house and did not wake up until she heard her son screaming at the officers. Defendant then approached the front door and, seeing that the officers were arresting her son, told them to leave her son alone. Contrary to Officer Watkins' testimony, defendant testified that her purse was lying upstairs on her bed and that she did not have it or any narcotics in her possession at the time. Defendant insisted that she did not hear any of the officers knock on the door or announce their presence prior to their entry into the premises. Defendant stated that at the time of the incident the inner door was open, but the screen was closed.

Gloria Slater also testified on behalf of the defense. Slater testified that she was in the kitchen,

in the back part of the house, when the officers first came onto the front porch. According to Slater, she walked out of the kitchen, through the den and into the living room, whereupon she saw the officers in the house. Slater testified that she did not hear the police officers before they entered the premises and did not hear anybody knock on the door. Slater corroborated defendant's testimony that the police retrieved the purse from the upstairs part of the house and that Thomas Slater did not try to run upstairs prior to his detainment.

On March 1, 1985, the trial judge ruled that the officers executing the warrant had not substantially complied with the knock-and-announce statute. The trial judge explained that the officers were not refused admittance and improperly entered the premises prior to allowing a sufficient time for a reply to their announcements of identity and purpose. Accordingly, the trial judge entered an order suppressing the narcotics seized during this search, and an order of dismissal followed.

The people appeal from the order of dismissal based on the suppression of evidence obtained in alleged violation of Michigan's knock-and-announce statute, MCL 780.656; MSA 28.1259(6). This statute provides as follows:

> The officer to whom a warrant is directed, or any person assisting him, may break any outer or inner door or window of a house or building, or anything therein, in order to execute the warrant, if, after notice of his authority and purpose, he is refused admittance, or when necessary to liberate himself or any person assisting him in execution of the warrant.

Following the evidentiary hearing, the Recorder's Court held that the police officers failed to

comply with the statute because they entered defendant's premises before having been refused admittance. We disagree.

Under the quoted statute, refusal of admittance is not limited to affirmative denials. *People v Doane,* 33 Mich App 579, 583, n 3; 190 NW2d 259 (1971), rev'd on other grounds 387 Mich 608; 198 NW2d 292 (1972); *People v Harvey,* 38 Mich App 39; 195 NW2d 773 (1972). In *Doane,* a plainclothes officer went to the defendant's home possessing an arrest warrant for the defendant's son and a search warrant. After completing a marijuana transaction and arresting the defendant's son on the driveway, the officer went to the front door accompanied by other officers, knocked on the door and said "Police officers—open up." The officers then observed the defendant and his wife watching them through the window. When it became apparent that neither the defendant nor his wife would open the door, the officers forcibly entered the premises and executed the search warrant. Based on these facts, this Court held that the officers were refused admittance and that the knock on the door, the announcement of the police officers' identities, the demand to be admitted and the allowance of a reasonable time for the occupants to answer the door substantially complied with the statute.

In the instant case, the officers were denied admittance and the manner in which they executed the search warrant substantially complied with the statute. At the evidentiary hearing, the prosecutor established that Sergeant Ferguson, possessing a valid search warrant to search defendant's house for narcotics, went to defendant's front porch, knocked on the door, announced his purpose and presence, and at that time saw a young man run towards the stairs. Fearing that

the young man was going to attempt to destroy the narcotics, Sergeant Ferguson immediately led the officers into the house and executed the warrant.

Because neither this Court nor our Supreme Court has had the opportunity to apply the quoted statute to similar facts, reference to the following United States Court of Appeals cases which interpreted the corresponding federal knock-and-announce statute, 18 USC 3109, is instructive. In *Stamps v United States*, 436 F2d 1059 (CA 9, 1971), the challenged search was made in connection with a lawful arrest. When the arresting officers appeared at the house in which the defendant was arrested and gave notice of their authority and purpose, they heard some commotion within the house and some footsteps which sounded as if someone was running away from the door. In response, the officers broke open the door and made their entry. The Ninth Circuit held that, based on these facts, the police had "adequate reason to believe that permission to enter had been denied" and that "reasonable force to effect the entry was permissible."

Similarly, in *McClure v United States*, 332 F2d 19 (CA 9, 1964), the defendants appealed their convictions for selling and concealing heroin. It was established that federal agents approached the defendants' residence with both a search warrant and an arrest warrant. Before reaching the front door, the officers passed by a window and were observed by an occupant who started to run. One of the officers went to the door and, upon identifying himself, heard footsteps running away from the door. Believing that the occupants were attempting to escape, the officer kicked open the door immediately and led the agents into the house, where they recovered incriminating evi-

dence. The Ninth Circuit held that the forcible entry complied with the requirements of the statute and, in support, explained as follows:

> The refusal of admittance contemplated by the statute will rarely be affirmative, but will oftentimes be present only by implication. Officer Fahey announced, as the statute requires, that federal agents had come to search pursuant to a warrant. When he heard footsteps "running in the wrong direction" he had grounds to believe that his request had been rejected. This is especially so since he had previously noticed one of the occupants of the house begin to run. There are no set rules as to the time an officer must wait before using force to enter a house; the answer will depend on the circumstances of each case. But officers are never required to wait until the occupants have flown and thus render a search unavailing and an arrest impossible. We think the circumstances were such as would convince a reasonable man that permission to enter had been refused. [Footnote omitted. 332 F2d 22.]

Other state appellate courts have held that, under the requirements of their knock-and-announce rules, similar conduct by occupants of premises subject to a search constituted a denial of admittance which justified a forced entry by the officers. See, *e.g., People v Hill,* 3 Cal App 3d 294; 83 Cal Rptr 305 (1970); *People v Langley,* 41 Cal App 3d 339; 116 Cal Rptr 80 (1974); *State v Brady,* 105 Ariz 592; 469 P2d 77 (1970).

In the instant case, when the officers executing the search warrant observed the young male run towards the stairs in the defendant's house following their knock and announcement of purpose and presence, they had a reasonable basis to believe that they were being denied admittance and that they were thereby justified in forcing entry into

the house. Under the circumstances in this case, the entry substantially complied with the requirements of the knock-and-announce statute.

Even if we assume that the officers were not denied admittance, we find that such failure to comply with the statute was excused by the officers' justified belief that the noncompliance was necessary to prevent the occupants from destroying the narcotics which the officers were hoping to find. Many federal courts have held that the existence of such an exigent circumstance excuses noncompliance with 18 USC 3109, *supra*. See, e.g., *Ker v California,* 374 US 23; 83 S Ct 1623; 10 L Ed 2d 726 (1963); *United States v Francis,* 646 F2d 251, 257-258 (CA 6, 1981); *United States v Smith,* 171 App DC 342, 348-349; 520 F2d 74, 80-81 (1975); *United States v Mapp,* 476 F2d 67, 75 (CA 2, 1973). When the officers saw the young man run towards the stairs following their arrival, they reasonably believed that any delay in their entry would give both the young man and the other occupants an opportunity to dispose of the narcotics. Having formed such a belief, the officers executing the warrant became excused from complying with the requirements of MCL 780.656; MSA 28.1259(6).

We conclude that the warrant was properly executed and that the trial court erred in suppressing the evidence.

Reversed.