PEOPLE v WILLIAMS (AFTER REMAND)

Docket Nos. 130174, 138931. Submitted January 6, 1993, at Grand
Rapids. Decided March 2, 1993, at 9:15 A.M.

Samuel W. Williams was convicted by a jury in the Saginaw
Circuit Court, Robert L. Kaczmarek, J., of delivering or manu-
facturing 50 grams or more, but less than 225 grams, of
cocaine, delivering or manufacturing less than 50 grams of
heroin, possession of marijuana, and possession of a firearm
during the commission of a felony. He was sentenced to two
terms of ten to twenty years' imprisonment for the first two
convictions and to terms of one and two years' imprisonment,
respectively, for the last two convictions. He appealed. The
Court of Appeals, HOLBROOK, JR., P.J., and MCDONALD and
NEFF, JJ., entered an order on December 10, 1990, remanding
the case for resentencing in light of *People v Schultz,* 435 Mich
517 (1990), and *People v Perez,* 417 Mich 1100.21 (1983), finding
that the defendant had not been sentenced under the appropri-
ate statute with regard to the first two convictions. The Court
retained jurisdiction. On remand, the trial court noted that the
appropriate statute provided for lower minimum sentences, but
chose to impose the same sentences.

After remand, the Court of Appeals *held:*

1. The trial court properly denied the defendant's motion for
a directed verdict with regard to the felony-firearm charge. A
question of fact existed regarding whether the gun, found
inside a metal box located in a padlocked wooden safe in the
basement of the defendant's home, was accessible to him at the
time he possessed the controlled substances.

REFERENCES

Am Jur 2d, Criminal Law §§ 535-537, 606, 629; Expert and Opinion
Evidence §§ 32-36, 41-43, 47-52, 55; Searches and Seizures § 91;
Weapons and Firearms §§ 7-28.

Statutory presumption of possession of weapon by occupants of
place or vehicle where it was found. 87 ALR3d 949.

What constitutes compliance with knock-and-announce rule in
search of private premises—state cases. 70 ALR3d 217.

2. The trial court properly allowed a police officer to testify as an expert about drug manufacturing and delivery.

3. The trial court properly used the second edition of the sentencing guidelines in calculating the sentences.

4. The defendant was sentenced under the appropriate statute on remand. The sentences, which were within the range recommended by the guidelines, were not disproportionate or cruel or unusual.

5. The defendant failed to establish a prima facie case that a conviction he received in 1967, allegedly without the benefit of counsel, was improperly considered by the court in determining his score under the sentencing guidelines.

6. The trial court properly denied the defendant's motion to suppress the evidence. Although the police did not comply with the requirements of the knock-and-announce statute, MCL 780.656; MSA 28.1259(6), in executing the search warrant, reversal is not required under the facts of this case because the Fourth Amendment standard of reasonableness was not offended.

Affirmed.

1. CRIMINAL LAW — FELONY-FIREARM — POSSESSION OF FIREARM.

A person has possession of a firearm for purposes of the felony-firearm statute when it is accessible and available at the time a felony is committed; actual possession of the firearm at the time of arrest is not required, and access to the weapon is not to be determined solely by reference to the arrest (MCL 750.227b; MSA 28.424[2]).

2. CRIMINAL LAW — EVIDENCE — EXPERT WITNESSES.

The admissibility of expert testimony is governed by a three-part test: the expert must be qualified, the evidence must serve to give the trier of fact a better understanding of the evidence or assist in determining a fact in issue, and the evidence must be from a recognized discipline; the critical inquiry is whether the testimony will aid the factfinder in making the ultimate decision in the case (MRE 702).

3. CRIMINAL LAW — SENTENCES — SENTENCING GUIDELINES.

The second edition of the sentencing guidelines must be used in all sentencing proceedings occurring after October 1, 1988.

4. CRIMINAL LAW — SENTENCES — SENTENCING GUIDELINES — PRO-
     PORTIONALITY.

   A sentence within the range recommended by the sentencing
   guidelines is presumptively proportional.

5. SEARCHES AND SEIZURES — KNOCK-AND-ANNOUNCE STATUTE.

   The knock-and-announce statute requires that police officers exe-
   cuting a search warrant for a premises give notice of their
   authority and purpose and be refused entry before using force
   to enter; a violation of the statute does not require the exclu-
   sion of evidence seized unless the Fourth Amendment standard
   of reasonableness is also offended; noncompliance with the
   statute will be excused if the police have a basis to conclude
   that evidence would be destroyed or lives would be endangered
   by the delay of complying with the statute or if events indicate
   that compliance would be a useless gesture (US Const, Am IV;
   MCL 780.656; MSA 28.1259[6]).

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, *Michael D. Thomas,* Prosecuting Attorney, and *Edwin R. Brown,* Assistant Prosecuting Attorney, for the people.

Samuel W. Williams, in propria persona, and *Cyril C. Pessina,* for the defendant.

AFTER REMAND

Before: SAWYER, P.J., and HOOD and JANSEN, JJ.

PER CURIAM. Defendant appeals as of right from his convictions, following a jury trial, of delivering or manufacturing between 50 and 224 grams of cocaine, MCL 333.7401(2)(a)(iii); MSA 14.15(7401)(2) (a)(iii), delivering or manufacturing less than 50 grams of heroin, MCL 333.7401(2)(a)(iv); MSA 14.15(7401) (2)(a)(iv), possession of marijuana, MCL 333.7403(2)(d); MSA 14.15(7403)(2)(d), and possession of a firearm during the commission of a

felony, MCL 750.227b; MSA 28.424(2).[1] He was sentenced to two terms of ten to twenty years for the first two convictions and to terms of one and two years, respectively, for the last two convictions.[2] We affirm.

Defendant first argues that the trial court erred in not directing a verdict in his favor with regard to the felony-firearm charge because the gun found in his home was not in his possession. We disagree.

The record shows that the loaded gun was found inside a metal box located within a padlocked wooden safe in the basement of defendant's home, along with some cash and two bankbooks belonging to defendant. Defendant and a woman were also found in the basement, along with drugs, money, and paraphernalia. Neither made any attempt to get to the safe, but, instead, defendant attempted to flush some contraband down the toilet. The keys to the safe were never found; the police broke into it.

The felony-firearm statute punishes anyone "who carries or has in his or her possession a firearm when he or she commits or attempts to

---

[1] In his initial appeal as of right, defendant was assigned Docket Number 130174. For the reasons discussed in defendant's fourth argument, the case was remanded for resentencing by order of the Court, HOLBROOK, JR., P.J., and McDONALD and NEFF, JJ., on December 10, 1990. On appeal from resentencing, defendant was assigned Docket Number 138931. The two cases have been consolidated because they involve the same conviction.

For the sake of completeness, we also note that this case was successfully appealed to the Supreme Court on an unrelated issue. *People v Williams*, 437 Mich 888; 464 NW2d 709 (1991).

[2] Defendant was initially sentenced to sixteen to twenty-four months for the conviction of possession of marijuana. However, the trial court sua sponte resentenced defendant on that charge to one year, in compliance with the statute. MCL 333.7403(2)(d); MSA 14.15(7403)(2)(d).

commit a felony . . . ." MCL 750.227b; MSA 28.424(2). A person has "possession" of a weapon when it is "accessible and available . . . at the time [the crime is committed]." *People v Terry,* 124 Mich App 656, 662; 335 NW2d 116 (1983). "[D]efendant's access to the weapon should not be determined solely by reference to his arrest." *People v Becoats,* 181 Mich App 722, 726; 449 NW2d 687 (1989). To the extent that *People v Myers,* 153 Mich App 124, 126; 395 NW2d 256 (1986), requires actual possession of the weapon at the time of defendant's arrest, we decline to follow it.

Here, the presence of defendant's bankbooks inside the locked box created a question of fact regarding whether the contents of the safe, including the gun, were accessible to him at the time he possessed the controlled substances found in his home. We find that the trial court properly refused to take this issue away from the jury.

Defendant next argues that the trial court abused its discretion in allowing a police officer to testify as an expert in the area of drug manufacturing and delivery. We disagree.

MRE 702, which governs the admissibility of expert testimony, requires that there "be facts in evidence that require or are subject to examination and analysis by a competent expert, and [that] there . . . be knowledge in a particular area that belongs more to an expert than an ordinary person." *People v Ray,* 191 Mich App 706, 707; 479 NW2d 1 (1991). Admissibility is governed by a three-part test: (1) the expert must be qualified; (2) the evidence must serve to give the trier of fact a better understanding of the evidence or assist in determining a fact in issue; and (3) the evidence must be from a recognized discipline. *People v Beckley,* 434 Mich 691, 711; 456 NW2d 391 (1990). "The critical inquiry, however, is whether such

testimony will aid the factfinder in making the ultimate decision in the case." *Ray, supra* at 707; see also *Beckley, supra* at 715. The fact that an expert's opinion may embrace "an ultimate issue" in the case does not make it inadmissible. *Ray, supra* at 707; see also *Beckley, supra* at 727; MRE 704.

Here, as in *Ray*—which happened to involve the same police officer—the testimony concerned how the evidence found in defendant's house was routinely used to cut, weigh, package, and sell controlled substances. The officer was qualified because of his training and experience. The information was not within the layman's common knowledge and was useful to the jury in determining defendant's intent at the time he possessed the drugs. *Ray, supra* at 707-708. There is also no serious question that drug-related law enforcement is a recognized area of expertise. The trial court did not abuse its discretion in admitting the officer's testimony.

Defendant's third argument is that the trial court erroneously used the second edition of the sentencing guidelines, rather than the first, in calculating his sentences. We disagree. Administrative Order No. 1988-4, 430 Mich ci, requires that the second edition of the guidelines be used in all sentencing proceedings that, as was the case here, take place after October 1, 1988. *People v Potts*, 436 Mich 295, 298; 461 NW2d 647 (1990).

For his fourth argument, defendant contends that he was not sentenced under the appropriate statute with regard to the first two convictions. We again disagree.

When defendant was initially sentenced, the court erroneously sentenced him under the old statute that provided for higher minimum sentences. See MCL 333.7401(2)(a); MSA 14.15(7401)(2)

(a); see also *People v Schultz,* 435 Mich 517, 526; 460 NW2d 505 (1990). However, on remand by this Court in light of *Schultz,* the trial court noted that the lower minimums were applicable but nevertheless chose to impose the same sentences. Defendant was not sentenced under the wrong statute.

Defendant also argues that the sentences were nevertheless disproportionate and cruel or unusual. We must again disagree. Because the sentences were within the range recommended by the guidelines, they are presumptively proportional, especially in light of defendant's extensive drug record and his prior manslaughter conviction. *People v Broden,* 428 Mich 343, 354-355; 408 NW2d 789 (1987); see also *People v Milbourn,* 435 Mich 630; 461 NW2d 1 (1990). Defendant has failed to overcome this presumption of proportionality. Likewise, because the sentences are not disproportionate in relation to the crimes, they are therefore not cruel or unusual. *People v Bullock,* 440 Mich 15, 40-41; 485 NW2d 866 (1992).

In a related issue, defendant further argues that, in determining his score under the guidelines, the trial court erred in considering a conviction he received in 1967 without the benefit of counsel. Once again, we disagree. Our review of the record in that case has disclosed that, before he pleaded guilty, defendant was told of his right to counsel, was asked whether he wanted appointed counsel, and that, instead of accepting, he indicated that he was not indigent. Defendant therefore has failed to establish a prima facie case that the 1967 conviction was improperly considered. *People v Moore,* 391 Mich 426, 440-441; 216 NW2d 770 (1974).

Defendant next argues that the trial judge should have disqualified himself because he had prosecuted defendant on behalf of the people in

1967 and 1977 and had still been a prosecutor in 1987, when defendant was again prosecuted. We disagree.

First, we find that this issue is moot because defendant sought to disqualify the judge only in the bench trial of an habitual offender charge that was eventually dismissed. Second, the issue has been waived because defendant did not seek review de novo by the chief judge of the circuit court from the trial judge's refusal to disqualify himself. *Law Offices of Lawrence J Stockler, PC v Rose,* 174 Mich App 14, 23; 436 NW2d 70 (1989); MCR 2.003(C)(3)(a). Third, defendant has failed to convince us that there was actual bias on the trial judge's part. See MCR 2.003(B)(2). Lastly, defendant has failed to show that, as a prosecutor, the trial judge personally appeared or participated in defendant's 1987 conviction, the only one within two years of the conviction at issue here. See *People v Delongchamps,* 103 Mich App 151, 155-156; 302 NW2d 626 (1981).

For his last argument, defendant contends that the trial court should have granted his motion to suppress evidence because the police did not knock and announce themselves before breaking into defendant's home to execute the search warrant. We disagree.

The testimony produced at the suppression hearing showed that, as soon as the officers pulled into defendant's driveway and got out of their van, they noticed someone at the front window looking at them. Several officers then started yelling "police; search warrant" and ran into defendant's open attached garage and proceeded to break into the house through the door connecting the garage and the house. Another officer ran toward the window to "cover" the person who had spotted them and saw several people inside running to-

ward the back of the house. That officer was also yelling "police; search warrant." There was no contrary testimony.

The knock-and-announce statute requires police executing a warrant to give "notice of [their] authority and purpose" and be refused entry before they are allowed to force their way in. MCL 780.656; MSA 28.1259(6). Here, the statute was not complied with because there was no reasonable time for the occupants to answer the door following the officers' yelled announcement. However, this violation does not require the exclusion of evidence seized inside unless "the Fourth Amendment standard of reasonableness is also offended." *People v Polidori,* 190 Mich App 673, 677; 476 NW2d 482 (1991). Thus, noncompliance with the statute will be excused "[i]f the police officers have a basis to conclude that evidence will be destroyed or lives will be endangered by" the delay of complying with the statute, or "if events indicate that compliance . . . would be a useless gesture." *Id.,* at 677. In practice, substantial compliance with the statute has been found or has been excused where the officers have been observed before knocking and where, after knocking, officers have heard running and other suspicious noises inside. See, e.g., *People v Jackson,* 179 Mich App 344, 346-347; 445 NW2d 513 (1989), sentence vacated 437 Mich 866 (1990) (as officers approached, a woman was seen running from the front porch into the house); *People v Slater,* 151 Mich App 432, 434-440; 390 NW2d 260 (1986) (after officers knocked, they observed defendant running up the stairs inside the house); *People v Brown,* 43 Mich App 74, 77-90; 204 NW2d 41 (1972) (after police knocked, they heard running inside away from the front door); *People v Doane,* 33 Mich App 579, 581-584; 190 NW2d 259 (1971), rev'd on other grounds 387 Mich

608 (1972) (after knocking, officers saw defendant and his wife observing them through a window instead of opening the door). On the other hand, noncompliance will not be excused where police do not allow a reasonable time for the occupants to open the door if no suspicious movements are heard to justify an immediate intrusion. *Polidori, supra* 674-678.

In light of the above case law and the facts of this case, we are not left with the definite and firm conviction that the trial court made a mistake in denying defendant's motion to suppress.

Affirmed.